Gray, J., in writing the opinion of the court in Stamford v. Fisher, 140 N. Y. 187, 35 N. E. 500, said:

"The Legislature has power to authorize municipal corporations to regulate hawking and peddling in its streets. ＊ ＊ ＊ As the statute, however, is in restriction of the common law and of the general right of persons to pursue a legitimate and innocent occupation, and to deal rightfully and usefully with their property, it should receive a strict construction, and its operations should be confined to those cases which it is plainly discoverable that mischief exists and for which the law was intended to provide a remedy."

Except where the corporation has special charter power to enact the by-law or ordinance, the courts not only annul ordinances and by-laws because they contravene the higher laws of Constitutions and statutes, but they do not hesitate to declare them void and inoperative because they appear to the judicial mind unreasonable or oppressive.

We are unable to see how the ordinance in question was necessary or proper. There is no evidence in the case that the appellant, at any time, had obstructed the street with his cart to the injury of any one.

Williams, J., in reversing the conviction in Buffalo v. Lindsman, supra, said:

"In no way was the ordinance necessary for the preservation of public health or the good of the city. It in no way tended to protect the public health or public order. Hawking and peddling is recognized as a legitimate business by the Legislature, and is so recognized by the city and its ordinances, and is subject always to reasonable regulation."

The foregoing language may be said to apply in all respects with full force and effect to the case at bar.

The ordinance was therefore invalid, and no conviction could properly be had for a violation thereof.

The judgment was erroneous and should be reversed, and the defendant discharged.

Ordered accordingly.

(66 Misc. Rep. 206.)

## In re SPRING VALLEY SWAMP.

### (Rockland County Court. February, 1910.)

1. DRAINS (§ 34*)—PROCEEDINGS TO DRAIN SWAMP LANDS—PROCEDURE.
    Drainage Act 1869 (Laws 1869, c. 888) § 2, as amended, provides that the court to which the application is made, if satisfied that such drainage is necessary, shall thereupon appoint commissioners. Section 3 provides that the necessity shall be determined by the commission, one of whom must be a civil engineer, or surveyor, after notice to the property owners, by a personal view of the lands and otherwise. *Held,* that the court should not take evidence and determine in advance of the appointment of commissioners whether it is necessary for the public health that the lands in question should be drained; section 3 contemplating that a property owner whose lands are affected by the proposed improvement shall have an opportunity to be heard and submit his proof.
    [Ed. Note.—For other cases, see Drains, Dec. Dig. § 34.*]

2. DRAINS (§ 2*)—STATUTES—REPEAL—POWER OF MUNICIPAL CORPORATIONS.
    Village Law (Consol. Laws, c. 64, § 89) § 88, giving village boards of trustees power to construct drains and culverts, and to regulate water

courses, ponds, and watering places within the village, is not exclusive, and the drainage act (Laws 1869, c. 888), as amended by Laws 1906, c. 115, which provides (section 1) that two or more applications under the section respecting different lands within the same town or incorporated village may be made by one proceeding, and that the application may be made by the president of the board of trustees of an incorporated village on behalf of the village, being in terms made applicable to incorporated villages, is neither hostile to nor inconsistent with the village law, and hence is not repealed by implication by such law.

[Ed. Note.—For other cases, see Drains, Cent. Dig. § 17; Dec. Dig. § 2.*]

3. DRAINS (§ 2*)—STATUTES (§ 159*)—REPEAL BY IMPLICATION.

The repeal of a statute by implication is not favored by law, and for that result the repugnancy must be so palpable as to make it obvious upon reading the two acts together that it was not the intent that both should remain in force at the same time, and hence the public health law (Consol. Laws, c. 45), which provides a summary method of abating a nuisance which is a menace to the public health, did not by implication repeal the drainage act of 1869 (Laws 1869, c. 888), providing for the drainage of swamp lands; the two statutes affording consistent remedies, and both being intended to accomplish the protection of the public health by different methods of procedure.

[Ed. Note.—For other cases, see Drains, Dec. Dig. § 2;* Statutes, Cent. Dig. § 229; Dec. Dig. § 159.*]

Proceedings by the Village of Spring Valley for drainage of lands under the drainage act of 1869 as amended. Contested by Louise C. Knauth. Judgment for petitioners.

George A. Blauvelt, for petitioners.
Hamilton R. Squier, for Louise C. Knauth.

McCAULEY, J. This proceeding is taken under the drainage act of 1869 (Laws 1869, c. 888) as amended and now in force, to effect the drainage of certain real property consisting, as alleged, of swamp, bog, meadow, low, or wet lands, wholly within the corporate limits of the village of Spring Valley, a municipal corporation, organized under the general act for the incorporation of villages in this state, and located in the county of Rockland.

The petition, which is signed and verified by Theodore F. Reed, president of the village, and by three of the trustees thereof, and by certain other persons who are residents and property owners therein, describes the property sought to be drained, a portion of which is owned by one Louise C. Knauth, and avers, among other things, that stagnant water accumulates thereon, and that noxious and unwholesome odors and stenches arise therefrom, at times, which are a menace to the public health, and prays for the appointment of three commissioners, for the purposes and with the powers set forth in chapter 888 of the Laws of 1869 and the acts amendatory thereof and supplemental thereto. Notice of the presentation of the petition was given to the said Louise C. Knauth, who appeared by counsel upon the presentation of the petition and filed a verified answer thereto in which, among other things, she admits that she is the owner of a portion of the lands sought to be drained; but denies that they consist of swamp, bog, low, or wet lands, that stagnant water accumulates thereon, that un-

wholesome odors or stenches are emitted therefrom, and that it is necessary for the preservation of the public health that the lands owned by her and by Peter S. Van Orden, one of the petitioners, should be drained; and asks that the prayer of the petition be denied, and that it be dismissed, with costs.

Upon the oral argument had upon the presentation and filing of the petition and answer, it was conceded by counsel for the property owner above mentioned that the petition contained all necessary averments and conformed to the requirements of the statute above referred to; but he then insisted, and contends in the brief which he has submitted: (1) That an issue of fact is raised by the answer as to whether or not it is necessary for the preservation of the public health that the lands in question shall be drained, and that the court should take evidence and determine, before the appointment of commissioners, whether or not such drainage is necessary and especially because section 2 of the statute provides that:

"The court to which such an application is made, if satisfied that such drainage is necessary, shall thereupon appoint and commission three persons," etc.

(2) That the drainage act can only be upheld and its provisions enforced when the lands sought to be drained are a menace to the public health, and, therefore, inasmuch as the lands involved in this proceeding and sought to be drained are wholly within the corporate limits of the village, that the health officers thereof have exclusive jurisdiction in the premises. And (3) that the drainage act has been and is repealed by implication as to any such municipality.

I do not think it is necessary or even proper for the court to take evidence and thereby determine, in advance of the appointment of commissioners, whether it is necessary for the public health that the lands in question should be drained. Section 1 of the act above referred to provides that the application to the court shall be by petition, duly verified, setting forth the facts upon which the application is based, the names of the owners of lands to be affected by the proceedings, so far as the same can with reasonable diligence be ascertained, and praying for the appointment of three commissioners for the purposes and with the powers thereinafter set forth. And section 2 provides, among other things, that the commissioners appointed, one of whom must be a civil engineer or surveyor, shall "hear and determine, first, whether it is necessary, in order to drain such lands, that a ditch or ditches or other channels for the free passage of water should be opened through lands belonging to others; and second, whether it is necessary for the public health that such lands should be drained, and to take such other and further steps with reference thereto as are hereinafter provided for." And section 3 specially provides that the question of necessity shall be determined by the commissioners, after notice to the property owners, by a personal view of the lands and otherwise. This section contemplates, if it does not in terms provide, that a property owner whose lands are affected by the proposed improvement shall have an opportunity to be heard and to submit his proof.

The statute nowhere provides that notice of the presentation of the

petition shall be given to a property owner whose land is affected by the proposed improvement; and, if the Legislature had intended that the question of necessity should be heard and determined by the court upon the presentation of the petition and before the appointment of commissioners, the statute would have so provided, and would, also, have required that notice be given to the property owner; and, moreover, if the statute contemplated or provided that the question of necessity should be heard and determined in the first instance by the court, it would not have clothed the commissioners with authority to determine that question. The meaning and intent of the statute is, I think, very clear that the question of necessity shall be determined by the commissioners, one of whom must be a civil engineer or surveyor and specially qualified to consider and determine that question. If the commissioners err in their determination, the right of appeal is given to an aggrieved property owner, who may thereby review and correct their determination. The statute contemplates, I think, that the court shall determine, from the petition and such supplemental or corroborative evidence, if any, as may be submitted in support of the application, whether or not a proper case is made and presented for the appointment of commissioners.

Nor is the drainage act hostile to or inconsistent with the village law (Consol. Laws, c. 64), or the public health law (Consol. Laws, c. 45). The board of trustees of a village, it is true, is given power, under subdivision 15 of section 88 of the village law (Consol. Laws, c. 64, § 89), to "construct drains and culverts, and regulate water courses, ponds and watering places within the village"; but this power is not exclusive, nor, indeed, is it adequate to meet every situation and condition that may arise or exist in a village.

By the very terms of the act, its provisions are made to apply to incorporated villages. Section 1, as amended by chapter 115, Laws 1906, and now in force, provides that:

"Two or more applications under this section respecting different lands or parcels within the same town or incorporated village, may be made by one proceeding or petition," etc.

And, in the same section, as thus amended, it is further provided that the application may be made by "the president of the board of trustees of any incorporated village on behalf of said village," etc. See, also, Laws 1908, c. 439, § 10.

The public health law provides a summary method of abating a nuisance which is a menace to the public health, but its provisions are in no sense antagonistic to or in conflict with the provisions of the drainage act. The two statutes may stand together and afford concurrent remedies, both of which are intended to accomplish the same result by different methods of procedure, namely, the protection of the public health.

The general rule of law relating to the repeal of a statute by implication is very clearly stated in the recent case entitled Matter of Tiffany, 179 N. Y. 457, 72 N. E. 512, where the court says:

"The repeal of a statute by implication is not favored by law, for, when the Legislature intends to repeal an act, it usually says so expressly. * * * When, however, two statutes are so hostile that both cannot stand, or the

later covers the entire ground of the earlier, or is obviously intended as a substitute therefor, the last enactment of necessity governs, for it is presumed to express the last intention of the lawmakers. In order to have this effect, the repugnancy must be so palpable that upon reading the two acts together it is obvious, without the aid of elaborate argument, that both could not have been intended to remain in force at the same time. If by any fair construction, whether strict or liberal, a reasonable field of operation can be found for both acts, that construction should be adopted. In other words, if the old and the new law, by any reasonable interpretation, can stand together, there is no repeal by implication."

For the reasons thus briefly stated, I am of the opinion that the petitioners are entitled to proceed under the drainage act and, upon the petition presented, to the appointment of commissioners as therein provided.

Let an order to that effect be presented for entry upon three days' notice to counsel for Mrs. Knauth.

Ordered accordingly.